## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION


Anne Davy,

     Plaintiff,

-V-                                         Case No. 2:03-CV-1079
                                                   JUDGE SMITH
                                                   Magistrate Judge Abel

Union County Health Department,
et al.,

     Defendants.


## OPINION AND ORDER

Plaintiff asserts claims of discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, as well as state law claims.  Defendants move for summary judgment on all claims.  For the reasons that follow, the Court grants defendants' summary judgment motion with respect to plaintiff's Title VII claims, but declines to exercise supplemental jurisdiction over plaintiff's state law claims.


## I.  Facts

Plaintiff Anne Davy is an individual female citizen of the State of Ohio.  Defendant Union County Board of Health

1

("Board") is a political subdivision operating in Union County, Ohio, and is an employer under Title VII.  Defendant Gary M. McDowell is president of the Board.

Davy began serving as Health Commissioner in September 1996. Davy depo. at 15. Initially, her status was that of a part-time Health Commissioner working twenty-four hours per week. *Id*. Davy and the Board entered a one year written contract which contained a mutual termination clause whereby either party could terminate the contract with ninety days written notice. *Id*. at 16 [Exhibit C].

For the following year, commencing in September 1997, Davy's hours were increased from twenty-four to twenty-five hours per week, so that she would qualify for health insurance coverage. *Id*. at 18. Again, the one year written contract contained a mutual termination clause whereby either party could terminate the contract with thirty days written notice. *Id*. at 18-19 [Exhibit E].

In September 1998, Davy's hours were increased from twenty-five to thirty hours per week.  *Id.* at 19. The one-year written contract again contained a mutual termination clause whereby either party could terminate the contract with thirty days written notice. *Id.* at 20 [Exhibit F].

In September 1999, Davy's hours remained at thirty per week. *Id*. at 22. The contract was for fifteen months, so that the contract period would shift to a calendar year and end December 31, 2000. *Id*. at 22, 36. For the fourth year in a row, the contract contained a mutual termination clause whereby either party could terminate the contract with thirty days written notice. *Davy depo.* at 22 [Exhibit H].

2

In December 2000, Davy's hours for the calendar year 2001 were increased from thirty to forty per week, which made her a full-time employee. *Id*. at 24 [Exhibit J]. Her salary was increased from $40,500 to $45,500. *Id*. For the first time, Davy's one year contract was changed so that the termination clause was no longer mutual. *Id*. at 25. Instead, Davy was accorded the unilateral right to terminate the contract with thirty days notice. *Id*.

In 2001, Davy and the Board began negotiations for a new contract for the calendar year 2002. At that time, the members of the Board who could vote were Dr. Carol Karrer, Dr. Anita Wantz, Marge Myers (all female) and Al Channel, Eric Milholland, and Mike Brake (all male).[2] *Davy depo*. at 67-68. The negotiations were contentious. See *Affidavits* of Dr. Carol Karrer, Marge Myers,[3] Al Channel, and Eric Milholland; *Davy depo*. at 37 ("The tortured negotiations were the negotiations which ultimately led to Exhibit L, correct? Yes.").

Ultimately, Davy asked the Board to give her a raise from $45,500 per year to $58,000—a salary increase of $12,500. *Davy depo*. at 27-28.  However, during the course of those negotiations, Board Member Michael Brake indicated to Davy that during the following year, Davy's salary would be $60,000 and not a penny more. *Id.* at 37. For its part, the Board believed it had a verbal agreement with Davy concerning her salary expectations for the subsequent year. *Affidavits* of Dr. Carol Karrer, Al Channel, Eric Milholland, and Marge Myers; *Davy depo*. at 65. Davy does not deny that the Board members may have observed her nodding her head in the affirmative thereby signaling to the Board her apparent agreement with Brake's statement. *Id*. at 39, 65-66.

When negotiations began in 2002 for the 2003 work year, Davy demanded a salary of $65,000 per year, which represented a $7,000 raise. *Id.* at 54 [Exhibit Q[5]]. The Board offered

Davy a two-year contract and was willing to pay Davy the $60,000 referenced during the prior year's negotiations and $63,000 for the second year. However, in exchange for a two-year contract, the Board desired to reinstate the termination clause as mutual in nature. *Id*. at 51-52 [Exhibit P].

Davy rejected the first and second year salaries of $60,000 and $63,000, respectively, and was opposed to a mutual termination clause. Eventually, Davy reduced her salary demand for the first year to $63,000 and $66,000 for the second year and further indicated that she would not sign any contract with a mutual termination clause. *Davy depo*. at 54.

On November 25, 2002, Davy wrote to Union County Assistant Prosecutor John Heinkel, who was representing the Board of Health during the negotiating process. Davy indicated to Heinkel that she believed that an impasse had been reached concerning contract negotiations. *Id*. at 58-59 [Exhibit S].

Davy later made "one last effort" to negotiate and sent the Board a letter expressing her positions. *Id*. at 59 [Exhibit T]. One of Davy's express concerns was "It is a matter of pride and necessity that I not work for less than the people I supervise." *Id*. at 60 (emphasis added). Davy also advised the Board that if the Board's final position was the ninety day mutual termination clause and a $60,000 salary for 2003, then she believed an impasse had been reached. *Davy depo*. at 60-61. Davy's final position was $63,000 for the first year and $66,000 for the second year. *Id*. at 61.

On December 9, 2002, Davy met with the Board in a public meeting. *Id*. During the course of the meeting, Davy reiterated that she wanted to be paid more than her highest paid subordinate who made $61,000 per year. *Id*. at 66. Board member Al Channel inquired whether

4

she would work for one dollar more than $61,000. *Id*. Davy replied that she would not and that it was a slap in the face. *Id*. at 62, 66.

The parties determined that they were at an impasse and the Board voted to withdraw the offer and advertise for a new health commissioner. *Id*. at 63, 68. Nonetheless, the Board offered to allow Davy to continue as Health Commissioner on a month-to-month basis, but she declined to continue working past December 31, 2002—the end of her last contract. Davy depo. Exhibit S.

## II.  Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).[1]   The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe.  Id.  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  Id.

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex, and Matsushita have effected "a decided change in summary judgment practice," ushering in a

---

[1] Reeves involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, Reeves, 530 U.S. at 150.  In contrast, in ruling on a summary motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party.  In re Morris, 260 F.3d 654, 665 (6th Cir. 2001). As such, Reeves did not announce a new standard of review for summary judgment motions.

6

"new era" in summary judgments.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in Street identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  Id. at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  Id. (quoting Liberty Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  Id.  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  Id. (quoting Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  Id. at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to

7

create a genuine issue of material fact.  <u>In re Morris</u>, 260 F.3d 654, 665 (6th

Cir. 2001).


### III.  Discussion

Defendants raise four arguments in support of their contention that they are entitled to summary judgment on plaintiff's Title VII claims: (1) plaintiff has failed to exhaust administrative remedies; (2) no individual liability under Title VII; (3) plaintiff has fails to state a prima facie case of gender discrimination; and (4) plaintiff has failed to demonstrate a hostile work environment.


### A.  Failure to Exhaust Administrative Remedies

Defendants point out that plaintiff failed to attach her "right-to-sue" letter to her complaint.  Plaintiff purports to cure this deficiency by attaching the right-to-sue letter to her memorandum in opposition to defendants' summary judgment motion.  There is, however, no such document attached to plaintiff's memorandum in opposition.   A person must possess a right-to-sue letter from the EEOC in order to file suit under Title VII.  <u>EEOC v. Frank's Nursery & Crafts, Inc.</u>, 177 F.3d 448, 456 (6th Cir.1999).  The Court concludes that plaintiff's Title VII claims are subject to dismissal as a result of plaintiff's

failure to demonstrate that she exhausted her administrative remedies.  The Court will proceed to address the remaining grounds for summary judgment as alternative bases for its decision.

### B.  No individual liability under Title VII

Defendants next argue that plaintiff's Title VII claims against defendant Gary McDowell must be dismissed because the Sixth Circuit has held that there is no individual liability under Title VII.  Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997).  Plaintiff concedes that there is no individual liability under Title VII.  The Court therefore dismisses plaintiff's Title VII claims against Gary McDowell.

### C.  Prima facie case of gender discrimination

Defendants argue that plaintiff has failed to adduce evidence to satisfy the elements of a prima facie case of gender discrimination.  Specifically, defendant contends that plaintiff is unable to show that she suffered an adverse employment action, in that the evidence shows conclusively that plaintiff voluntarily refused to accept the Board's offer.

The elements of prima facia case of employment discrimination are:

1.      that the plaintiff is a member of a protected class;

2.      that the plaintiff was qualified for the position;

3.      that the defendant subjected the plaintiff to an adverse employment action; and

4.      the defendant did not subject similarly situated persons outside the protected class to such adverse actions.

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802 (1973).

Plaintiff's entire argument in response is as follows:

The Affidavits of Jennifer Keagy and Anne Davy establish a prima facie that members of a protected class [sic]. Plaintiff and the female employees of the Board experienced disparate terms and conditions of employment by virtue of the imposition of different criteria for renewal of contracts, maintenance of employment [sic]. Also, see Depositions of Dee Houdashelt and Suzie Knox.

Memorandum in opposition at 7. First, plaintiff did not attach an affidavit by Jennifer Keagy to her memorandum in opposition, and the Court is unable to locate such a document in the record. Moreover, plaintiff does not cogently address defendants' argument. Most importantly, plaintiff does not adduce *evidence* that comparable male employees were treated more favorably. In addition, plaintiff's affidavit and the two cited deposition transcripts are devoid of any evidence that defendants subjected plaintiff to an adverse employment action.

Even viewed in the light most favorable to plaintiff, the record evidence shows that plaintiff voluntarily decided to reject the Board's offer of $60,000 for the first year, and $63,000 for

10

the second year.  The Court finds that plaintiff has failed to demonstrate a prima facie case of gender discrimination as a matter of law.  For this additional reason, defendants are entitled to summary judgment in their favor on plaintiff's Title VII disparate treatment claim.

### D.  Hostile Work Environment

Defendant argues that plaintiff cannot demonstrate an actionable hostile work environment.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).  Both an objective and a subjective test must be applied: the conduct must have been severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as having been abusive. Id. at 21-22.  Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir.2000).  Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include:

     1.      the frequency of the discriminatory conduct;

     2.      the severity of the discriminatory conduct;

11

3.      whether the discriminatory conduct is physically threatening or humiliating, or a mere offensive utterance;

4.      whether the discriminatory conduct interferes with an employee's work performance; and

5.      whether the plaintiff actually found the environment abusive.

Id. at 21-22; see also Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir.2000)(reciting

factors from Harris).  The Court has explained:

> Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Oncale, 523 U.S., at 81.  A recurring point in these opinions is that "simple teasing," id., at 82, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."  These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Id., at 80. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (hereinafter Lindemann & Kadue) (footnotes omitted). We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view. See, e.g., Carrero v. New York City Housing Auth., 890 F.2d 569, 577-578 (C.A.2 1989); Moylan v. Maries County, 792 F.2d 746, 749-750 (C.A.8 1986); See also 1 Lindemann & Grossman 805-807, n. 290 (collecting cases granting summary judgment for employers because the alleged harassment was not actionably severe or pervasive).

Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

The entirety of plaintiff's argument in response to defendants is as follows: "The severity and frequency of discriminatory and offensive treatment of female employees, including, but not limited to, the Plaintiff are established by the Affidavits of Ms. Davy, Ms. Keagy and the Deposition of Josephine Parsons, with attached exhibits."

The Court has reviewed the evidence plaintiff has submitted, except for the affidavit of Ms. Keagy, and concludes that even when the evidence is viewed in the light most favorable to plaintiff, plaintiff has fallen far short of demonstrating that she was subjected to a hostile work environment. For this additional reason, defendants are entitled to summary judgment in their favor on plaintiff's hostile work environment claim.

### E. State Law Claims

Having determined that plaintiff's federal claims are subject to dismissal, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). The Court dismisses plaintiff's state law claims without prejudice.

### IV. Disposition

Based on the above, the Court **GRANTS** defendants' summary judgment motion (Doc. 19).

The Clerk shall enter final judgment in favor of defendant, and against plaintiff, dismissing plaintiff's federal claims with prejudice and dismissing plaintiff's state law claims without

prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 19 from the Court's pending motions list.

**IT IS SO ORDERED.**

/s/ George C. Smith

**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

14